Insurance Commissioner
ACCEPTED SOP
SEP 06 2024
TIME: 2pm

## SUPERIOR COURT OF THE STATE OF WASHINGTON
## FOR SAN JUAN COUNTY

| | |
|---|---|
| SAN JUAN ISLAND LIBRARY DISTRICT,<br><br>Plaintiff,<br><br>v.<br><br>LEXINGTON INSURANCE COMPANY, FIDELIS UNDERWRITING LIMITED, HOUSTON SPECIALTY INSURANCE COMPANY, CONVEX INSURANCE UK LIMITED, BERKSHIRE HATHAWAY SPECIALTY INSURANCE,<br><br>Defendants. | NO.<br><br>COMPLAINT |

Plaintiff San Juan Island Library District (the "District") alleges as follows:

### I. INTRODUCTION

1.1     **Summary of Action.** This is an insurance-coverage action that concerns the rights and duties of the District and Defendants Lexington Insurance Company ("Lexington"), Fidelis Underwriting Limited ("Fidelis"), Houston Specialty Insurance Company ("HSIC"), Convex Insurance UK Limited ("Convex"), and Berkshire Hathaway Specialty Insurance ("Berkshire Hathaway") (together, the "Insurers").

COMPLAINT - 1

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

1.2     The Insurers issued the following insurance policies, which provide coverage for the District: Lexington Policy Nos. 017471590/08 and 011660476/09; Fidelis Policy No. PJ213647; HSIC Policy No. PJ213647; Convex Policy No. PJ213647; and Berkshire Hathaway Policy No. 42-PRP-316027-01 (together, the "Policies").

1.3     The Policies provide commercial property coverage for physical damage to the District's building, which is located at 660 Spring Street in Friday Harbor, Washington (the "Spring Street Building" or "SSB").

1.4     The District seeks:

(a)     A judicial declaration that the Policy provides coverage for the physical damage to the SSB and that the Insurers are estopped from denying coverage for some or all coverages available under the Policies;

(b)     Damages for breach of the Insurers' contractual duties under the Policies;

(c)     Damages for the Insurers' negligent claim investigation;

(d)     Damages for the Insurers' bad faith, and violations of the Washington Consumer Protection Act ("CPA") and Insurance Fair Conduct Act ("IFCA"), including actual, compensatory, and exemplary damages;

(e)     Pre-judgment and post-judgment interest; and

(f)     All attorney fees and costs incurred by the District in asserting this coverage claim and prosecuting this action, pursuant to the CPA, IFCA, and *Olympic S.S. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991).

## II. THE PARTIES

2.1.    **Plaintiff San Juan Island Library District (the "District").** The District is a

COMPLAINT - 2

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

junior taxing district within the state of Washington. It is a learning center for the community that serves approximately 8,800 residents on San Juan Island. The District owns the SSB.

2.2.     **Defendant Lexington Insurance Company ("Lexington").** Lexington is a corporation organized under the laws of the state of Delaware with its principal place of business in Boston, Massachusetts. It is part of the AIG family of insurance companies.

2.3.     **Defendant Fidelis Underwriting Limited ("Fidelis").** Fidelis is a foreign insurer organized under the laws of the United Kingdom.

2.4.     **Defendant Houston Specialty Insurance Company ("HSIC").** HSIC is corporation organized under the laws of the state of Texas, with its principal place of business in Houston, Texas. It is a part of the Skyward Specialty Insurance Group.

2.5.     **Defendant Convex Insurance UK Limited ("Convex").** Convex is a foreign Insurer organized under the laws of the United Kingdom.

2.6.     **Defendant Berkshire Hathaway Specialty Insurance ("Berkshire Hathaway").** Berkshire Hathaway is a corporation organized under the laws of the state of Nebraska, with its principal place of business in Omaha, Nebraska. It is a part of the Berkshire Hathaway Group.

### III. JURISDICTION AND VENUE

3.1.     **Jurisdiction.** This Court has subject matter jurisdiction under Article IV, Section 6 of the Washington State Constitution, RCW 2.08.010 and RCW 7.24.020. It has personal jurisdiction over Lexington, Fidelis, HSIC, Convex, and Berkshire Hathaway (together, the "Insurers") because the Insurers conduct business in Washington and because the actions and events giving rise to this cause of action occurred in Washington.

3.2.     **Venue.** Venue is proper under RCW 4.12.025(1) and RCW 48.05.220.

COMPLAINT - 3

GORDON TILDEN THOMAS CORDELL | 600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

## IV. STATEMENT OF FACTS

4.1. The San Juan Island Library District (the "District") owns the "Spring Street Building" ("SSB"), which is located on 660 Spring Street in Friday Harbor, Washington.

4.2. The SSB is a one-story building. It is approximately 28,000 square feet and has five wings that extend out from a central lobby.

**A.  The District insured the SSB under Policies issued by the Insurers.**

4.3. The District participates in a member-owned risk management pool, Enduris. Losses that exceed the risk pool's $250,000 self-insured retention ("SIR") are insured through the Public Entity Property Insurance Program ("PEPIP").

4.4. Enduris satisfied the applicable SIR for the loss at issue and is not a party to this lawsuit.

4.5. Lexington, Fidelis, HSIC, Convex, and Berkshire Hathaway (the "Insurers") insure losses at different layers within PEPIP. McLarens is the designated independent adjuster who investigates PEPIP losses on behalf of the Insurers.

**B.  Severe cold weather caused burst pipes at the SSB, which damaged the building.**

4.6. On or about December 30, 2021, a snowstorm caused freezing damage to sprinkler pipes at the SSB.

4.7. The District discovered water on the SSB's floor, which had spread throughout the building. Due to freezing and thawing, sprinkler lines located in the ceiling had broken and caused the water intrusion.

4.8. Multiple rooms in each of the five wings suffered water intrusion due to the broken pipes. The water damaged many areas, including the building's ceilings, floors, walls, and doorways.

4.9. The District promptly notified the Insurers of the water loss and the Insurers independent adjuster, McLarens, hired a construction consultant, MKA International, Inc. ("MKA"), to assist with the Insurers' claim investigation.

4.10. A remediation contractor selected by the District, ServPro, arrived at the site shortly after the District discovered the water loss.

4.11. ServPro lacked sufficient equipment to dry out the building and so the Insurers selected another contractor, Belfor Property Restoration, to handle mitigation and remediation efforts moving forward. Because the SSB contained asbestos, Belfor hired A-Tech Consultant, Inc. to provide advice regarding asbestos-related work activities.

**C.   The Insurers' consultants failed to propose a reasonable remediation plan for the water damage.**

4.12. The scope of work proposed by Belfor and A-Tech was inadequate.

4.13. To begin with, neither Belfor nor A-Tech located all the areas affected by asbestos or the water loss. They failed, for example, to properly inspect asbestos-affected areas at or around the ceilings, and neither A-Tech nor Belfor investigated whether the heating, ventilation, and air-conditioning (HVAC) system suffered moisture damage. Because their investigation was inadequate, their scope of work did not address the full scope of remediation work that was required at the SSB due to the water loss.

4.14. The Belfor and A-Tech scope of work also failed to satisfy industry standards. Their scope, for example, required drywall removal only if the drywall contained a moisture content of 15% or more. This parameter was unreasonable because applicable industry standards required removal of drywall if the moisture content exceeded a 1% threshold. Drywall,

moreover, can require replacement due to water damage (e.g., sagging) even if it lacks increased moisture content.

4.15. Further, Belfor's and A-Tech's scope of work failed to clearly delineate where drywall would be removed in the SSB (e.g., maps, marks on walls). Thus, subcontractors lacked sufficient direction to perform the necessary demolition work. Belfor's and A-Tech's scope of work also did not consider all potential pathways of asbestos exposure (e.g., prevention of asbestos exposure in the event walls, but not ceilings, were removed) and did not comply with applicable procedures to perform water damage restoration.

4.16. Accordingly, in a letter dated February 7, 2022, the District notified the Insurers of these deficiencies and demanded that they address Belfor's and A-Tech's inadequate scope of work. Moreover, because the scope was inadequate, the District was forced to hire its own construction consultant, O'Connor Construction Management, Inc. ("OCMI"), to inspect the site and assess the damage.

4.17. Thanks to the District's efforts and continued prodding, Belfor eventually agreed to revise and supplement its scope of work. But even this revised scope of work lacked sufficient detail regarding the scheduling and phasing of demolition and abatement. And the District did not receive Belfor's revised scope of work until March 14, 2022—that is, the District did not receive it until almost three months after the loss occurred.

**D.    The Insurers' consultants grossly underestimated the cost of repairing the damaged building.**

4.18. The District then waited until September 9, 2022—approximately nine months after the loss—for the Insurers' building consultant, MKA, to complete its estimate to repair the

SSB. And it waited another four months, until January 9, 2023, for the Insurers to send MKA's estimate to the District. Unfortunately, MKA's estimate of $1,395,518.22 was unreasonably low.

4.19.   MKA's estimate failed to account for numerous essential repairs. For example, it did not include interior insulation, superstructure repairs, exterior doors, various interior items (e.g., bumber rails, marker boards, signage, ADA stalls, fire protection) and work (e.g., glazing, interior finish work related to the floor), design fees, and other contingencies.

4.20.   In addition, the estimate did not include the costs associated with restoring water service to an adjacent building, the Heritage House, which lost access to water due to repair work performed by one of Belfor's subcontractors, Beacon Plumbing.

4.21.   MKA's estimate also greatly understated the reasonable costs of construction. The estimate, for example, did not include realistic pricing for general conditions, cabinetry, doors, drywall, electrical, flooring, insulation, lighting, plumbing, painting, bathroom accessories, window treatments, required code upgrades, and sales tax.

4.22.   In addition, MKA failed to adjust expenses appropriately for the increased costs of construction on Friday Harbor—which is only accessible by ferry—and concluded unreasonably that repairs could be completed in only three months.

4.23.   Because the Insurers and their consultants refused to reasonably investigate the District's insurance claim and account for the reasonable scope of repair and construction costs, the District hired another construction consultant, Roen Associates, to prepare a repair estimate.

4.24.   Roen concluded initially that it would cost millions of dollars more than MKA's estimate to repair the SSB using new materials of like kind and quality.

4.25.   The District notified the Insurers of these deficiencies and provided a copy of Roen's repair estimate to them on March 28, 2023. Again, however, the Insurers unreasonably

COMPLAINT - 7

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

delayed their claim investigation, refused to accept Roen's estimate, and failed to timely correct the flawed estimate prepared by MKA.

E. **The First IFCA Notice**

4.26. On May 22, 2023, approximately two months after the Insurers received Roen's estimate, they submitted requests for additional information to the District.

4.27. The District promptly provided the information requested in a letter dated June 7, 2023. The Insurers, however, continued to delay their investigation and refused to confirm the reasonable cost of repairing the SSB.

4.28. Accordingly, the District notified the Insurers of their violations of the Insurance Fair Conduct Act ("IFCA") and their unreasonable denial of benefits under the Policies in a letter dated July 13, 2023 (the "First IFCA Notice").

4.29. In the letter, the District identified the Insurers' unreasonable conduct and their violations of several Washington Administrative Code ("WAC") provisions, which govern the investigation and adjustment of insurance claims:

(a) WAC 284-30-350(1) (failing to fully disclose policy benefits and coverages);

(b) WAC 284-30-330(13) (failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for a denial of coverage);

(c) WAC 284-30-330(2) (failure to acknowledge and act promptly upon claim communications);

(d) WAC 284-30-330(3) failing to adopt and implement reasonable standards for the prompt investigation of insurance claims;

COMPLAINT - 8

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

(e) WAC 284-30-330(16) (failing to adopt and implement reasonable standards for the processing and payment of claims);

(f) WAC 284-30-330(6) (not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear);

(g) WAC 284-30-370 (failing to timely complete a reasonable claim investigation);

(h) WAC 284-30-330(10) failing to promptly notify the insured whether a claim has been accepted or denied after receiving a proof of loss); and

(i) WAC 284-30-380(3) failing to timely notify and explain to an insured why more time is needed to investigate).

4.30. The District explained in the First IFCA Notice that the Insurers had failed to accept or respond to the Roen estimate, which the Insurers had received and sat on for approximately four months.

4.31. The District further explained that the Insurers had taken nine months to prepare a construction cost estimate and then held the estimate for another four months before disclosing it to the District. Even then, the estimate prepared by the Insurers' consultants was insufficient to reasonably implement the required repairs.

4.32. Lexington hired outside counsel and responded to the First IFCA Notice in a letter dated August 1, 2023 (the "First IFCA Response"). Lexington denied liability under IFCA but failed to cure any of the deficiencies set forth in the District's First IFCA Notice.

F. **The Insurers' Unreasonable Response**

4.33. On August 31, 2023, McLarens finally responded to the Roen estimate on behalf of the Insurers.

4.34. The Insurers confirmed that MKA had increased its repair estimate but refused to accept the required scope of work and repair costs set forth by Roen. For example, the Insurers failed to acknowledge that the Policies provide an additional coverage for code upgrades.

4.35. The Insurers stated incorrectly that the District's future plans for the SSB impacted the appropriate calculation of benefits owed under the Policies.

4.36. Further, the Insurers mischaracterized earlier communications between MKA and OCMI and refused to acknowledge the reasonable scope of repair for the SSB.

4.37. The revised MKA estimate, for example, grossly underestimated the cost of repairing damaged: cabinetry; doors; walls, ceilings, and insulation; electrical; flooring; plumbing; trim work; light fixtures; paneling and wood wall finishes; painting; toilet and bath accessories, mirrors, showers, curtains, and window treatments.

4.38. And the updated estimate still failed to adequately account for design fees, fixtures, furniture, and equipment, permits and municipal fees, restoration of water at the Heritage House, or the increased cost of construction on Friday Harbor.

4.39. The District notified the Insurers of these problems in a letter dated March 19, 2024 and demanded that they accept coverage based upon the full amount of a revised repair estimate prepared by Roen, which totaled $4,773,584.

4.40. McLarens responded for the Insurers approximately one month later in a letter dated April 24, 2024. At that time, the Insurers provided another revised estimate from MKA, which totaled $1,817,126.90.

4.41. Although MKA had increased the new estimate by almost $500,000 from its original valuation, it still failed to account for all of the reasonable repair work and associated

COMPLAINT - 10

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

costs identified by Roen and the District. MKA's revised estimate undervalues the loss by more than $2.9 million.

4.42. The Insurers have also failed to promptly reimburse the District for claim preparation expenses.

4.43. In addition, the Insurers pressured Enduris to terminate the District's membership in Enduris.

4.44. On June 28, 2024, Enduris terminated the District's membership in Enduris in response to pressure from the Insurers.

**G.   THE SECOND IFCA NOTICE**

4.45. On June 21, 2024, the District again notified the Insurers of their unreasonable denial of benefits under the Policies and violations of multiple Washington claim-handling regulations (the "Second IFCA Notice").

4.46. The Insurers hired outside counsel and responded to the Second IFCA Notice in a letter dated August 7, 2024 (the "Second IFCA Response"). The Insurers denied liability under IFCA but failed to cure any of the deficiencies set forth in the District's Second IFCA Notice.

4.47. Because the Insurers refuse to reasonably investigate, adjust, or pay for the coverage damage at SSB, the District had no choice but to bring the present lawsuit.

**V.   FIRST CLAIM: DECLARATORY JUDGMENT**

5.1. **Incorporation by Reference.** The allegations of paragraphs 1.1 through 4.47 are incorporated by reference as if fully set forth herein.

5.2. **Coverage Under the Policy.** A real and justiciable controversy exists over the coverage provided by the Policy, including the scope and extent of coverage for the physical damage to the SSB caused by the water loss.

COMPLAINT - 11

GORDON TILDEN THOMAS CORDELL | 600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

5.3. **Estoppel.** The Insurers accepted coverage for the physical damage to the SSB caused by the water loss. In doing so, the communications provided by the Insurers did not identify any exclusions, limitations, or policy provisions, which would bar or limit the District's ability to recover for the full cost of replacing physical damage to property at the SSB. The District has justifiably relied on the Insurers' communications, and any repudiation of their full acceptance of coverage would harm the District by leaving it liable to pay for the cost to repair damaged property that it reasonably believe was covered under the Policies. Under Washington law, moreover, the "mend-the-hold" doctrine bars the Insurers from raising any defense to coverage not previously asserted during the investigation and adjustment of the insurance claim. *See, e.g., Karpenski v. Am. Gen. Life Cos.*, 999 F. Supp. 2d 1235 (W.D. Wash. Apr. 2, 2014). Accordingly, the Insurers are estopped from denying coverage for any portion of the District's insurance claim, including but not limited to claims for replacement cost, code upgrade, and building contents coverage.

5.4. **Declaratory Relief.** The District is entitled to a declaration by this Court that coverage exists under the terms of the Policies, that the Insurers are estopped from denying coverage, and that the reasonable repairs related to the water loss should be fully paid under the Policies.

## VI. SECOND CLAIM: BREACH OF CONTRACT

6.1. **Incorporation by Reference.** The allegations of paragraphs 1.1 through 5.4 are incorporated by reference as if fully set forth herein.

6.2. **Breach of Contract.** The Insurers breached the Policies by failing or refusing to pay for the reasonable cost to repair damage to the SSB caused by the water loss, by failing to

disclose and timely pay all benefits owed under the Policies, by refusing to explain the basis for their claim and coverage decisions, and by not satisfying their obligations under the Policies.

6.3. **Damages**. As a direct and proximate result of the Insurers' breaches of the Policies, the District has been deprived for the full benefits of its insurance coverage under the Policies. The District is entitled to a money judgment against the Insurers for the cost of repairing all physical damage caused by the water loss, and any and all other damages and reimbursements to which the District is entitled under the provisions of the Policies.

6.4. **Additional Damages**. As another direct and proximate result of the Insurers' breaches of the Policies, the District has been forced to incur attorney fees and other expenses to prosecute this action and is entitled to reimbursement of these fees and expenses in accordance with the principles set forth in *Olympic S.S. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991).

## VII. THIRD CLAIM: NEGLIGENCE

7.1. **Incorporation by Reference**. The allegations of paragraphs 1.1 through 6.4 are incorporated by reference as if fully set forth herein.

7.2. **Negligence**. The Insurers owed a duty of ordinary care with respect to their investigation and handling of the District's claim for insurance coverage.

7.3. **The Insurers Breached their Duty to Reasonably Investigate and Adjust the District's Claim**. The Insurers breached their duties by failing to reasonably investigate and the water loss and timely pay all benefits owed under the Policies.

7.4. **Damages**. As a direct and proximate result of the Insurers' negligence, the District has suffered damages in an amount to be proven at trial.

COMPLAINT - 13

GORDON
TILDEN
THOMAS
CORDELL

600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

## VIII. FOURTH CLAIM: INSURANCE BAD FAITH

8.1. **Incorporation by Reference.** The allegations of paragraphs 1.1 through 7.4 are incorporated by reference as if fully set forth herein.

8.2. **Duty of Good Faith and Fair Dealing.** The Insurers owe the District duties of good faith and fair dealing. Pursuant to these duties, the Insurers are obliged to refrain from taking any action that is unreasonable. The Insurers are likewise required to deal fairly with the District and give equal consideration to the District's financial interests.

8.3. **The Insurers Acted in Bad Faith.** The Insurers breached their duties of good faith and fair dealing by unreasonably conducting their claim investigation, misrepresenting policy provisions, failing to act promptly, failing to adopt reasonable standards for investigating claims, failing to reasonably explain the basis for their coverage position, failing to fully disclose policy benefits and coverages, placing their financial interests ahead of the District's, failing to comply with WAC 284-30-330, 350, 360, 370, and 380, and not attempting in good faith to effectuate a prompt, fair, and equitable settlement of the District's insurance claim.

8.4. **Damages.** As a direct and proximate result of the Insurers' breach of their duties of good faith and fair dealing, the District has suffered damages in an amount to be proven at trial.

## IX. FIFTH CLAIM: VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT (RCW 19.86)

9.1. **Incorporation by Reference.** The allegations of paragraphs 1.1 through 8.4 are incorporated by reference as if fully set forth herein.

9.2. **Violations of WAC 284-30, *et seq*.** Washington has adopted the Unfair Claims Settlement Practices Act under WAC 284-30, *et seq*. The Insurers violated the Unfair Claims

COMPLAINT - 14

GORDON TILDEN THOMAS CORDELL | 600 University Street Suite 2915 Seattle, WA 98101 206.467.6477

Settlement Practices Act, including separate provisions of WAC 284-30-330, 350, 360, 370, and 380. The violation of one provision of the Unfair Claims Settlement Practices Act is a *per se* violation of the CPA. The Insurers have committed *per se* and non *per se* violations of the CPA.

9.3. **Damages**. As a direct and proximate result of the Insurers' violations of the CPA, the District suffered damages in an amount to be proven at trial. Under the CPA, the District is entitled to recover its actual damages, exemplary damages, attorney fees, and costs.

## X. SIXTH CLAIM: VIOLATION OF THE INSURANCE FAIR CONDUCT ACT (RCW 48.30.015)

10.1. **Incorporation by Reference**. The allegations of paragraphs 1.1 through 9.3 are incorporated by reference as if fully set forth herein.

10.2. **IFCA Notices**. On July 13, 2023 and June 21, 2024, the District filed 20-day IFCA Notification Sheets with the Office of the Insurance Commissioner. These written notices, along with the grounds for the District's IFCA cause of action, were provided to the Insurers on these same dates. The Insurers failed to cure their IFCA violations within 20 days of receiving the IFCA Notices.

10.3. **Violations of IFCA**. The Insurers have unreasonably denied the District's claim for coverage and benefits under the Policies and have violated WAC 284-30, *et seq.* as described above. The Insurers' actions violate IFCA.

10.4. **Damages**. As a direct and proximate cause of this conduct, the District has suffered damages in an amount to be established at trial. Under IFCA, the District is entitled to recover its actual damages, exemplary damages, attorney fees, and costs.

## XI. PRAYER FOR RELIEF

WHEREFORE, the District prays for the following relief:

A. **Declaratory Judgment.** That this Court declare and decree that coverage exists for the full cost of repairing the property at the SSB damaged by the water loss under the terms of the Policies, and that the Insurers are estopped from denying coverage for any portion of the District's insurance claim.

B. **Breach of Contract.** That this Court declare and decree that the Insurers breached the Policies.

C. **Negligence.** That this Court declare and decree that the Insurers acted negligently during their investigation and adjustment of the District's insurance claim.

D. **Extra-Contractual Violations.** That this Court declare and decree that the Insurers breached their duties of good faith and fair dealing, violated multiple provisions of WAC 284-30, *et seq.*, and violated IFCA and the CPA.

E. **Money Damages.** That the District be awarded money damages in its favor and against the Insurers for the full cost of repairing any property damaged by the water loss, the full cost of increased insurance premiums, and any and all other damages and reimbursements to which the District is entitled under the provisions of the Polices, at common law, or under the CPA and IFCA, together with pre- and post-judgment interest.

F. **Attorneys' Fees and Costs of Suit.** That the District be awarded its reasonable attorneys' fees and costs, including, without limitation, actual attorneys' fees pursuant to *Olympic Steamship Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991).

COMPLAINT - 16

GORDON TILDEN THOMAS CORDELL
600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477

G.   **Other Relief.** For such further relief as the Court deems just, proper, and equitable.

DATED this 6th day of September 2024.

**GORDON TILDEN THOMAS & CORDELL** LLP
Attorneys for Plaintiff

By   *s/ Daniel R. Bentson*
Susannah C. Carr, WSBA #38475
Daniel R. Bentson, WSBA #36825
600 University Street, Suite 2915
Seattle, Washington 98101
206.467.6477
dbentson@gordontilden.com
scarr@gordontilden.com

COMPLAINT - 17

GORDON TILDEN THOMAS CORDELL | 600 University Street
Suite 2915
Seattle, WA 98101
206.467.6477